## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TALSK RESEARCH, INC.,

           Plaintiff,

    v.

EVERNOTE CORPORATION,

           Defendant.

Case No.

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Talsk Research, Inc. ("Talsk") for its Complaint against Defendant Evernote Corporation ("Evernote") states as follows:

## NATURE OF THE ACTION

1.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., including 35 U.S.C. §§ 271, 281, 283, 284 and 285.

## THE PARTIES

2.     Talsk is a Delaware corporation with its principal place of business in Chicago, Illinois.

3.     Evernote is a Delaware corporation with its principal place of business at 305 Walnut Street, Redwood City, California.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this patent infringement action under 28 U.S.C. §§ 1331 and 1338(a).

5.     This Court has personal jurisdiction over Evernote because Evernote is a Delaware corporation and has a designated agent for service of process in Delaware. Further,

Evernote has systematic and continuous contacts with Delaware and this judicial district and has thereby purposefully availed itself of the benefits and protections of the laws of the State of Delaware.

6.     Furthermore, this Court has personal jurisdiction over Evernote because, as described further below, Evernote has committed acts of patent infringement giving rise to this action within the State of Delaware and has thus established minimum contacts such that the exercise of personal jurisdiction over Evernote does not offend traditional notions of fair play and substantial justice.

7.     Being a Delaware corporation, Evernote resides in this judicial district.  Thus, venue is proper in this judicial district under 28 U.S.C. §1400(a).

## THE PATENT-IN-SUIT

8.     On February 13, 2007, U.S. Patent Number 7,178,097 ("the '097 Patent"), entitled "Method And System For Using A Communications Network To Archive And Retrieve Bibliography Information And Reference Material," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '097 Patent is attached as Exhibit 1 to this Complaint.

9.     Prior to the claimed invention, as the Internet continued to grow as a publishing medium, a problem developed due to the "decay" of citations in online references. *See, e.g.*, Exs. 2, 3. As the Background Art section of the '097 Patent states, "[a] problem with citing websites as sources of information is that 1) websites are subject to frequent, invisible modifications and 2) may be removed to a new address or removed from the Internet without notice."   Ex. 1 at 1:58-61.

10.     The innovations disclosed in the '097 Patent, through the implementation of computer software in the context of online or electronic publishing, provide a specific, technical solution (*e.g.,* enabling an author of a manuscript to reference a webpage and subsequently enabling a reader of the manuscript to retrieve the referenced webpage such that retrieval returns the information as it existed when originally referenced) to the Internet-related problem of "decay" of citations in online references. These innovations "relate[] generally to publishing and, more particularly, to a method and system for using a communications network such as the Internet to archive and retrieve bibliography information and reference material cited in a manuscript." *Id*. at 1:9-13.  The innovative technical solution can be characterized as "using a communications network to archive and retrieve bibliography information and reference material from an Internet source such as a web site cited in a manuscript" or "provid[ing] a method and system for using a communications network to archive a copy of the information from an Internet source cited in a manuscript." *Id*. at 2:57-65.

11.     Talsk is the assignee and owner of all rights, title, and interests in the '097 Patent, including the right to assert all causes of action arising under the '097 Patent and the right to any remedies for infringement of the '097 Patent.

## BACKGROUND FACTS

12.     Srikrishna Talluri, also known as Krish, is the inventor of the methods disclosed in the '097 Patent.  Mr. Talluri applied for the '097 Patent on November 13, 2000.

13.     As of the time the '097 Patent issued, Mr. Talluri had founded Business One, Inc., which practiced the '097 Patent by offering to sell the "RefMArc" product.  As of 2012, Mr. Talluri had also founded Talsk, which also practiced the '097 Patent by offering to sell the "JotLingo" product.

14.     JotLingo lets users take notes and save web-clips on the fly and access them from anywhere.

15.     On June 8, 2012, Mr. Talluri emailed the Chief Operations Officer of Evernote, Mr. Ken Gullicksen, stating as follows: "I'm writing to inquire if Evernote would be interested in JotLingo. In addition to the innovative features we're building, we also have patents that should be of increasing importance to Evernote—in light of the technical changes you've been making over the past year." Ex. 4, June 8, 2012 E-mail from Talluri to Gullicksen.

16.     Mr. Gullicksen met with Mr. Talluri on June 13, 2012. Ex. 5, June 14, 2012 E-mail from Talluri to Gullicksen.

17.     On June 13, 2012, Mr. Talluri gave a presentation of JotLingo to Evernote and Mr. Gullicksen. *Id.*

18.     During the meeting between Mr. Talluri and Mr. Gullicksen on June 13, 2012, Mr. Gullicksen made a video recording of a portion of Mr. Talluri's presentation of JotLingo. *Id.*

19.     On June 14, 2012, Mr. Talluri emailed Mr. Gullicksen, requesting that Evernote provide a copy of the video Gullicksen took of the JotLingo presentation without Mr. Talluri's permission. *Id.*

20.     In his June 14, 2012 e-mail, Mr. Talluri copied the then Chief Executive Officer of Evernote, and current Executive Chairman of Evernote, Mr. Phil Libin. *Id.*

21.     Six months later, subsequent to Mr. Talluri's meeting with, and presentation to, Evernote, Evernote made technical changes to the Evernote product and introduced Evernote Business.

22.     Specifically, after meeting with Mr. Talluri and recording portions of his presentation, Evernote made technical changes and incorporated the changes into its product.

Evernote's technical changes to its product copied the patented components of the JotLingo system and infringe claims of the '097 Patent.

23.     Indeed, Evernote incorporated all key features into its product that were outlined by Mr. Talluri in his demo to Mr. Gullicksen. *Compare*, Ex. 6, June 13, 2012 Jotlingo PowerPoint Presentation to Evernote, *with* Ex. 7, August 24, 2012 Evernote blog post announcing Evernote Business.

## COUNT I – DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,178,097 FOR THE CLAIMED METHOD

24.     The allegations set forth in the foregoing paragraphs 1 through 23 are hereby re-alleged and incorporated by reference.

25.     In violation of 35 U.S.C. §271(a), Evernote has directly infringed and continues to directly infringe, literally, and under the doctrine of equivalents, at least method Claims 8, 9, 14, 15, 19, 23, and 24 of the '097 Patent by making, using, offering for sale, selling and/or importing the inventions claimed.

26.     Evernote has infringed by performing the steps recited in these claims in connection with its, and/or its customers, usage of the Evernote Platform, including Evernote Web Clipper (the "Evernote Reference Preservation System"), in this judicial district and elsewhere in the United States (directly or through intermediaries).

27.     Evernote directly infringes at least Claims 8, 19, and 23 of the '097 Patent when Evernote itself creates manuscripts in the Evernote Reference Preservation System and then performs all steps recited in these claims to archive reference material contained in the manuscript or bibliography of the manuscript. Without limitation, Evernote performs, and has performed, each step of the claimed methods when it: (1) tests the Evernote Reference Preservation System, (2) internally uses the Evernote Reference Preservation System, and (3)

publicly demonstrates the Evernote Reference Preservation System via, for example, "how to" web pages and online videos. *See, e.g.*, Ex. 8 (Evernote "Getting Started" guide); Ex. 9 (blog post by an Evernote employee, detailing how she uses Evernote to stay organized at work). *See also*, https://help.evernote.com/hc/en-us (last visited August 29, 2017) (Evernote Help and Learning website that includes user guides, tips, and tutorials).

28.     By way of example, Evernote directly infringes, when, while demonstrating the Evernote Reference Preservation System, it authors a manuscript and uses a web site on the Internet as a reference for the manuscript. *See, e.g.*, Exs. 10, 23 (Evernote user guides demonstrating how to create a note in Evernote); Ex. 23 (Evernote user guide demonstrating how to create a note and describing a note as "any piece of information you want to save for later.").

29.     By way of example, Evernote directly infringes when, while demonstrating the Evernote Reference Preservation System, it uses a first communications device (*e.g.*, a computer) that is connected to the Internet or world wide web to transmit or transfer the address or identification of the web site to an Evernote database that is connected to the Internet or world wide web such that the Evernote database obtains a copy of the web site such that the obtained web site is verbatim to the web site as on the Internet or world wide web at the time it transmitted or transferred the web site address or identification to the Evernote database. *See, e.g.*, Ex. 11 (Evernote user guide with video and instructions demonstrating Evernote Web Clipper and describing Web Clipper as "a simple extension for [a] web browser that lets [a customer] capture full-page articles, images, selected text, important emails, and any web page"); Ex. 17 (Evernote user guide demonstrating that a customer can "launch the Web Clipper by clicking the elephant from [the] browser toolbar and detailing that "once [a customer] clicks[s] [s]ave, Web Clipper smart filing automatically stores both the contents and the URL of

the web page into Evernote, as a note in [the customer's] default notebook.").

30.     By way of example, Evernote directly infringes when, while demonstrating the

Evernote Reference Preservation System, it associates or assigns a distinctive or unique key to

the copy of the web site, which the Evernote Reference Preservation System then stores, along

with the copy of the web site, at or in the Evernote database. *See, e.g.*, Ex. 12 (Evernote user

guide demonstrating how to copy and paste a copy an Evernote public link (URL) to a note and

describing a public link as a "unique URL [a customer] can copy and paste to any application");

Ex. 13 (Evernote tutorial demonstrating how to create note links via the "Copy Note Link"

feature and detailing that after selecting "Copy Note Link," a "link to that note [is] placed in the

system clipboard"); Ex. 14 (Evernote Certified Consultant detailing that "[a] Note Link in

Evernote is like a URL, but instead of referencing a unique web address, it references a unique

note in Evernote" and that "[e]ach note in Evernote has a unique ID associated with it – kind of

an internal permalink that is a unique identifier of that note….this unique note ID is what gets

copied and utilized when you create note links between notes.").

31.     By way of example, Evernote directly infringes when, while demonstrating the

Evernote Reference Preservation System, it cites the web site as being a reference for the

manuscript, by listing identification of the web site along with the distinctive or unique key in

the manuscript or bibliography of the manuscript. *See, e.g.*, Ex. 12 (Evernote user guide

demonstrating how to list identification of a web site with an Evernote public link); Ex. 13

(Evernote tutorial demonstrating how to create note links and use note links to connect between

notes); Ex. 15 (Evernote blog post demonstrating how to create a table of contents with note

links, wherein the note link includes both a distinctive or unique key and identification of the

web site); Ex. 9 (Evernote blog post demonstrating how a customer can use a table of contents to stay organized).

32.     By way of example, Evernote directly infringes when, while demonstrating the Evernote Reference Preservation System, it obtains the distinctive or unique key from the manuscript or bibliography of the manuscript and then transmits the distinctive or unique key to the Evernote database using a second communications devices (*e.g.*, a computer) connected to the Internet or world wide web in order to request a copy of the web site. *See, e.g.*, Ex. 12, (Evernote user guide demonstrating how to use Evernote public links to share notes); Ex. 13 (Evernote tutorial demonstrating how to create note links and how to use note links to connect between notes).

33.     By way of example, Evernote directly infringes when, while demonstrating the Evernote Reference Preservation System, the Evernote database transmits or transfers a copy of the stored copy of the web site to Evernote via the Internet or web and the second communications device in response to the Evernote database receiving the distinctive or unique key from Evernote such that the copy of the web site transmitted or transferred from the Evernote database to Evernote is verbatim to the web site as on the Internet or web at the time Evernote transmitted the web site address or identification to the Evernote database. *See, e.g.*, Exs. 9, 15 (Evernote user guides demonstrating the notes that the Evernote database transmits or transfers to a customer after the customer selects a note link).

34.     By way of example, Evernote directly infringes dependent Claim 9 of the '097 Patent, when, while demonstrating the Evernote Reference Preservation system, it stores an immutable copy of the web site in the Evernote Database. *See, e.g.*, Ex. 11 (Evernote user guide demonstrating how to use Web Clipper and detailing that with Web Clipper, customers can

"[s]ave everything to Evernote and keep it forever."); Ex. 16 ("click on the Web Clipper in your toolbar and you'll have content of the page saved forever."); Ex. 17 (Evernote user guide explaining that "once [a customer] clicks[s] [s]ave, Web Clipper smart filing automatically stores both the contents and the URL of the web page into Evernote, as a note in [their] default notebook.").

35.     By way of example, Evernote directly infringes dependent Claim 14 of the '097 Patent, when, while demonstrating the Evernote Reference Preservation System, it uses an e-mail as a reference for the manuscript, transmits a copy of the e-mail to the Evernote database using the first communications device for storage of the copy of the e-mail by the database, and the database transmitting a copy of the e-mail to Evernote via the Internet and the second communications device in response to the database receiving a request for a copy of the e-mail from Evernote. *See, e.g.*, Ex. 18 (Evernote tutorial demonstrating how to save email into Evernote); Ex. 19 (Evernote blog post demonstrating how to use Web Clipper to clip emails from Gmail).

36.     By way of example, Evernote directly infringes dependent Claim 15 of the '097 Patent when, while demonstrating the Evernote Reference Preservation System, it uses a digital file as a reference for the manuscript, transmits a copy of the digital file to the Evernote database using the first communications device for storage of the copy of the digital file by the database, and the database transmitting a copy of the digital file to Evernote via the Internet and the second communications device in response to the database receiving a request for a copy of the digital file from Evernote. *See, e.g.*, Ex. 11 (Evernote user guide demonstrating Web Clipper and detailing that "Evernote Web Clipper is a simple extension for your web browser that lets you capture full-page articles, images, selected text, important emails, and any web page that inspires

you"); Ex. 20 (Evernote blog post demonstrating how to use Web Clipper to save PDFs to Evernote).

37.     By way of example, Evernote directly infringes dependent Claim 24 of the '097 Patent, when, while demonstrating the Evernote Reference Preservation System it accesses the Internet to locate the web site prior to citing the web site in the manuscript. *See, e.g.*, Ex. 11 (Evernote user guide demonstrating Web Clipper and detailing that "Evernote Web Clipper is a simple extension for your web browser that lets you capture full-page articles, images, selected text, important emails, and any web page that inspires you").

38.     In addition to directly infringing at least Claims 8, 19, and 23 of the '097 Patent by performing all of the steps of the claimed methods itself, Evernote also directly infringes at least Claims 8, 19, and 23 of the '097 Patent by performing some of the claimed steps of the claimed methods and sufficiently directing and controlling customers of the Evernote Reference Preservation System (*e.g.*, authors of and/or audiences to manuscripts) to perform the remaining claimed steps such that Evernote is liable for the performance of these remaining, claimed steps by such customers.

39.     Customers of the Evernote Reference Preservation System include both individual and corporate customers (inclusive of such corporate customers' agents and/or employees). Evernote has over 20,000 corporate customers including, for example, MailChimp, Freitag, and Glynn Capital Management. *See, e.g.*, Exs. 27, 28.

40.     Evernote provides the Evernote Reference Preservation System to its individual customers at least through Evernote Basic, Evernote Plus, and Evernote Premium, or equivalent names or designations. *See, e.g.*, Exs. 21, 22 (detailing the various Evernote plans).

41.     Evernote provides the Evernote Reference Preservation System to its corporate customers at least through Evernote Business. *See e.g.*, Ex. 22 (detailing Evernote Business).

42.     Evernote directs and controls customers of the Evernote Reference Preservation System to perform claimed steps of the '097 by, among other things, conditioning use of the Evernote Reference Preservation System on performance of such steps.

43.     Evernote directs and controls customers of the Evernote Reference Preservation System to perform the claimed steps of the '097 by, among other things, conditioning the receipt of the benefits associated with Talsk's patented invention—*e.g.*, the benefit of referencing and archiving a web site for subsequent retrieval as bibliographical information—upon performance of the patented steps of the '097.

44.     Evernote directly infringes by directing or controlling customers of the Evernote Reference Preservation System to use the Evernote Reference Preservation System to author a manuscript and use a web site on the Internet as a reference for the manuscript. *See, e.g.*, Exs. 10, 23 (Evernote user guide instructing customers how to create a note and use Web Clipper to clip email, news, and other digital content from the web or emails into Evernote); Ex. 23 (Evernote user guide instructing customers how to create a note and describing a note as "any piece of information you want to save for later.").

45.     Evernote directs and controls its customers by conditioning use of the Evernote Reference Preservation System on performance of authoring a manuscript and using a web site on the Internet as a reference of the manuscript by such customers. Evernote also directs and controls its customers by conditioning receipt of the benefits associated with the Evernote Reference Preservation System—the referencing and archiving of a web site for subsequent

retrieval as bibliographical information—on performance of this patented step by such customers.

46.     Evernote directly infringes by directing and controlling customers of the Evernote Reference Preservation System to use a first communications device (*e.g.*, a computer) that is connected to the Internet or world wide web to transmit or transfer the address or identification of the web site to an Evernote database that is connected to the Internet or world wide web such that the Evernote database obtains a copy of the web site such that the obtained web site is verbatim to the web site as on the Internet or world wide web at the time the customer transmitted or transferred the web site address or identification to the Evernote database. *See, e.g.*, Ex. 11 (Evernote user guide with video and instructions on how to use Web Clipper and describing Web Clipper as "a simple extension for [a] web browser that lets [a customer] capture full-page articles, images, selected text, important emails, and any web page."); Ex. 17 (instructing customers to "launch the Web Clipper by clicking the elephant from [the] browser toolbar" and detailing that "once [a customer] clicks[s] [s]ave, Web Clipper smart filing automatically stores both the contents and the URL of the web page into Evernote, as a note in [the customer's] default notebook.").

47.     Evernote directs and controls its customers by conditioning use of the Evernote Reference Preservation System on performance of using a first communications device (*e.g.*, a computer) that is connected to the Internet or world wide web to transmit or transfer the address or identification of the web site to an Evernote database that is connected to the Internet or world wide web such by such customer. Evernote also directs and controls its customers by conditioning receipt of the benefits associated with the Evernote Reference Preservation

System—the referencing and archiving of a web site for subsequent retrieval as bibliographical information—on performance of at least the steps recited in this patented step by such customer.

48.     Evernote directly infringes by directing or controlling customers of the Evernote Reference Preservation System to associate or assign a distinctive or unique key to the copy of the web site, which the Evernote Reference Preservation System then stores, along with the copy of the web site, at or in the Evernote database. *See, e.g.*, Ex. 12 (Evernote user guide instructing customers that to share notes with others they can "[c]opy and paste a public link (URL) to a note" and that "[e]very note in Evernote comes with a unique URL [the customer] can copy and paste to any application."); Ex. 13 (Evernote tutorial instructing customers on how to create note links and "use note links to create a table of contents for a set of notes inside of a notebook"); Ex. 14 (Evernote Certified Consultant detailing that "[a] Note Link in Evernote is like a URL, but instead of referencing a unique web address, it references a unique note in Evernote" and that "[e]ach note in Evernote has a unique ID associated with it – kind of an internal permalink that is a unique identifier of that note….this unique note ID is what gets copied and utilized when you create note links between notes.").

49.     Evernote directs and controls its customers by conditioning use of the Evernote Reference Preservation System on performance of associating or assigning a distinctive or unique key to the copy of the web site by such customer. Evernote also directs and controls its customers by conditioning receipt of the benefits associated with the Evernote Reference Preservation System—the referencing and archiving of a web site for subsequent retrieval as bibliographical information—on performance of at least the steps recited in this patented step by such customers.

50.     Evernote directly infringes by directing or controlling customers of the Evernote Reference Preservation System to cite the web site as being a reference for the manuscript, by listing identification of the web site along with the distinctive or unique key in the manuscript or bibliography of the manuscript. *See, e.g.*, Ex. 12 (Evernote user guide instructing customers how to list identification of a web site with an Evernote public link); Ex. 15 (Evernote blog post instructing customers how to create a table of contents with note links, wherein the note link includes both a distinctive or unique key and identification of the web site).

51.     Evernote directs and controls its customers by conditioning use of the Evernote Reference Preservation System on performance of citing the web site as being a reference for the manuscript, by listing identification of the web site along with the distinctive or unique key in the manuscript or bibliography of the manuscript by such customers. Evernote also directs and controls its customers by conditioning receipt of the benefits associated with the Evernote Reference Preservation System—the referencing and archiving of a web site for subsequent retrieval as bibliographical information—on performance of this patented step by such customers.

52.     Evernote directly infringes by directing or controlling customers of the Evernote Reference Preservation System to obtain the distinctive or unique key from the manuscript or bibliography of the manuscript and then transmitting the distinctive or unique key to the Evernote database using a second communications devices (*e.g.*, a computer) connected to the Internet or world wide web in order to request a copy of the web site that is verbatim to the web site as on the Internet or world wide web at the time another customer of the Evernote Reference Preservation System transmitted or transferred the web site address or identification to the Evernote database. *See, e.g.*, Ex. 12 (Evernote blog post detailing that "[e]very note in Evernote

comes with a unique URL you can copy and paste to any application. Once someone has a public link to your note, they always have the most recent version of your note, and can even save it directly to their Evernote account. Because it is a public link, anyone with that link can see the contents of your note until you stop sharing it."); Ex. 15 (Evernote blog post instructing customers that to use note links to share notes, they "can paste the [note] link anywhere – a calendar event, a Post It on your desktop, another note, another application that you use, etc.").

53.     Evernote directs and controls its customers by conditioning use of the Evernote Reference Preservation System on performance of obtaining the distinctive or unique key from the manuscript or bibliography of the manuscript and then transmitting the distinctive or unique key to the Evernote database using a second communications devices (*e.g.*, a computer) connected to the Internet or world wide web in order to request a copy of the web site that is verbatim to the web site as on the Internet or world wide web at the time another customer of the Evernote Reference Preservation System transmitted or transferred the web site address or identification to the Evernote database by such customers. Evernote also directs and controls its customers by conditioning receipt of the benefits associated with the Evernote Reference Preservation System—the referencing and archiving of a web site for subsequent retrieval as bibliographical information—on performance of this patented step by such customers.

54.     To the extent customers do not perform this step under Evernote's direction or control, Evernote itself, when after its customers request the Evernote database for the copy of the web site, transmits or transfers a copy of the stored copy of the web site to its individual or corporate customer via the Internet or web and the second communications device in response to the Evernote database receiving the distinctive or unique key from the individual or corporate customer such that the copy of the web site transmitted or transferred from the Evernote database

to the individual or corporate customer is verbatim to the web site as on the Internet or web at the time the individual or corporate customer who authored the note, transmitted the web site address or identification to the Evernote database. *See, e.g.*, Exs. 9, 15 (illustrating the notes that the Evernote database transmits or transfers to a customer after the customer selects a note link).

55.     Evernote establishes the manner and timing of the performance of the claimed steps of the '097 by customers of the Evernote Reference Preservation System through at least the Evernote web site, Evernote customer support, Evernote Certified Consultants, and Evernote user guides and tutorials, which, among other things, describe how to use the Evernote Reference Preservation System to obtain the benefit Talsk's patented invention. *See, e.g.*, Ex. 10 (Evernote "Getting Started" guide); Exs. 11, 23 (Evernote user guide with instructions on how to use Web Clipper to save web content to Evernote); Ex. 12 (Evernote user guide with instructions on how to create Evernote public links and share notes with Evernote); Ex. 13 (Evernote user guide with instructions on how to create Evernote note links and share notes with note links); Ex. 15 (Evernote user guide instructions on how to create Evernote note links and share notes with note links); Ex. 24 (detailing the services provided by Evernote Certified Consultants, including in-person and virtual training sessions); Ex. 29 (Evernote Mac Customer Guide); Ex. 30 (Evernote blog post with instructions on how to create "commonplace notebooks"). *See also*, https://help.evernote.com/hc/en-us (Evernote Help and Learning website) (last visited on August 29, 2017).

56.     Evernote has directly infringed, and still is directly infringing the '097 Patent in this District and elsewhere by marketing, promoting, soliciting, importing, offering for sale, selling and distributing the Evernote Reference Preservation System, that when used as intended

and directed by Evernote, infringes at least Claims 8, 9, 14, 15, 19, 23 and 24 of the '097 Patent, either literally or under the doctrine of equivalents.

57.     Evernote's infringement has injured or will continue to injure Talsk and Talsk is entitled to recover damages adequate to compensate it for Evernote's infringement, which in no event can be less than a reasonable royalty.

58.     Talsk is entitled to damages in accordance with 35 U.S.C. §§ 271, 281, 284, and 287.

## COUNT II – INDIRECT INFRINGEMENT OF U.S. PATENT NO. 7,178,097 FOR THE CLAIMED METHOD

59.     The allegations set forth in the foregoing paragraphs 1 through 58 are hereby re-alleged and incorporated by reference.

60.     In violation of 35 U.S.C. §271(b), Evernote, with knowledge of the '097 Patent at least as of June 2012, has knowingly induced infringement of the '097 Patent with specific intent, by its activities relating to the marketing, distribution, and/or sale of the Evernote Preservation System and infringing uses thereof, and by instructing and encouraging customers to operate and use the Evernote Preservation System in an infringing manner with knowledge that these actions would infringe the claims of the '097 Patent, including at least Claims 8, 19, and 23 of the '097 Patent.

61.     Customers of the Evernote Reference Preservation System directly infringe at least Claims 8, 19, and 23 of the '097 Patent by performing all the claimed steps of the claimed methods.

62.     Evernote induces its customers to infringe at least Claims 8, 19, and 23 of the '097 Patent by actively encouraging customers to use the Evernote Reference Preservation System in an infringing manner through advertisements and instructions on the Evernote

website.   *See, e.g.*,   https://help.evernote.com/hc/en-us   (Evernote Help and Learning website) (last visited on August 29, 2017).

63.     Evernote induces its customers to infringe at least Claims 8, 19, and 23 of the '097 Patent by actively encouraging customers to use the Evernote Reference Preservation System in an infringing manner by providing training and training materials that instruct its customers on how to use the Evernote Reference Preservation System in an infringing manner. *See, e.g.*, Exs. 8, 10 (Evernote "Getting Started" guides); Exs. 11, 23 (Evernote user guides with instructions on how to use Web Clipper to save web content to Evernote); Ex. 12 (Evernote user guide with instructions on how to create Evernote public links and share notes with Evernote); Ex. 13 (Evernote user guide with instructions on how to create Evernote note links and share notes with note links); Ex. 15 (Evernote user guide with instructions on how to create Evernote note links and share notes with note links); Ex. 29 (Evernote Mac Customer Guide).

64.     At least in certain instances, Evernote provides training and training material to its existing and potential customers through Evernote Certified Consultants. *See, e.g.*, Exs. 24, 25 (details regarding the Evernote Certified Consultant program and the services consultants provide, including in-person and virtual training sessions). *See also*, https://evernote.com/certified-consultants (Evernote Certified Consultant webpage) (last visited August 29, 2017).

65.     Evernote induces its customers to infringe at least Claims 8, 19, and 23 of the '097 Patent by actively encouraging customers to use the Evernote Reference Preservation System in an infringing manner by providing customer support to its customers on how to use the Evernote Reference Preservation System in an infringing manner. *See, e.g.*,

https://help.evernote.com/hc/en-us/requests/new (Evernote Support website) (last visited August 29, 2017).

66.     By way of example, Evernote induces customers to use the Evernote Reference Preservation System to author a manuscript and use a web site on the Internet as a reference for the manuscript through advertising and instructions available on the Evernote web site. *See, e.g.*, Exs. 10, 23 (Evernote user guide instructing customers how to create a new note and use Web Clipper to clip email, news, and other digital content from the web or emails into Evernote).

67.     By way of example, Evernote induces customers to use the Evernote Reference Preservation System to use a first communications device (*e.g.*, a computer) that is connected to the Internet or world wide web to transmit or transfer the address or identification of the web site to a Evernote database that is connected to the Internet or world wide web, such that the Evernote database obtains a copy of the web site, wherein the obtained web site is verbatim to the web site as on the Internet or world wide web at the time the customer transmitted or transferred the web site address or identification to the Evernote database. *See, e.g.*, Ex. 11 (Evernote user guide with video and instructions demonstrating Web Clipper); Ex. 17 (Evernote user guide instructing customers to "launch the Web Clipper by clicking the elephant from [the] browser toolbar and detailing that "once [a customer] clicks[s] [s]ave, Web Clipper smart filing automatically stores both the contents and the URL of the web page into Evernote, as a note in [the customer's] default notebook.").

68.     Evernote induces customers to use the Evernote Reference Preservation System to associate or assign a distinctive or unique key to the copy of the web site, which the Evernote Reference Preservation System then stores, along with the copy of the web site, at or in the Evernote database. *See, e.g.*, Ex. 12 (Evernote user guide instructing customers that to share

notes with others they can "[c]opy and paste a public link (URL) to a note); Ex. 13 (Evernote tutorial instructing customers how to "create note links" and "use note links to create a table of contents for a set of notes inside of a notebook"); Ex. 14 (Evernote Certified Consultant detailing that "[a] Note Link in Evernote is like a URL, but instead of referencing a unique web address, it references a unique note in Evernote"; "Each note in Evernote has a unique ID associated with it – kind of an internal permalink that is a unique identifier of that note….this unique note ID is what gets copied and utilized when you create note links between notes.").

69.     Evernote induces customers to use the Evernote Reference Preservation System to cite the web site as being a reference for the manuscript, by listing identification of the web site along with or without the distinctive or unique key in the manuscript or bibliography of the manuscript. *See, e.g.*, Ex. 12 (Evernote user guide instructing customers on how to list identification of a web site with an Evernote public link); Ex. 13 (Evernote tutorial demonstrating how to create note links and use note links to connect between notes); Ex. 15 (Evernote blog post instructing customer on how to create a table of contents with note links, wherein the note link includes both a distinctive or unique key and identification of the web site).

70.     Evernote induces customers to use the Evernote Reference Preservation System to obtain the distinctive or unique key from the manuscript or bibliography of the manuscript and then transmitting the distinctive or unique key to the Evernote database using a second communications devices (*e.g.*, a computer) connected to the Internet or world wide web in order to request a copy of the web site that is verbatim to the web site as on the Internet or world wide web at the time another customer of the Evernote Reference Preservation System transmitted or transferred the web site address or identification to the Evernote database. *See, e.g.*, Ex. 12 ("Every note in Evernote comes with a unique URL you can copy and paste to any application.

Once someone has a public link to your note, they always have the most recent version of your note, and can even save it directly to their Evernote account. Because it is a public link, anyone with that link can see the contents of your note until you stop sharing it"); Ex. 15 (Evernote blog post instructing customers on how to use note links to share notes stating, "you can paste the [note] link anywhere – a calendar event, a Post It on your desktop, another note, another application that you use, etc.").

71.     Evernote induces customers to use the Evernote Reference Preservation System to transmit a copy of the stored copy of the web site from the Evernote database via the Internet or world wide web and the second communications device in response to the request.

72.     Evernote has induced, and still is inducing, the infringement of the '097 Patent in this District and elsewhere by marketing, promoting, soliciting, importing, offering for sale, selling, and distributing the Evernote Reference Preservation System, that when used as intended and directed by Evernote, infringes at least Claims 8, 19, and 23 of the '097 Patent, either literally or under the doctrine of equivalents.

73.     Evernote's infringement has injured or will continue to injure Talsk and Talsk is entitled to recover damages adequate to compensate it for Evernote's infringement, which in no event can be less than a reasonable royalty.

74.     Talsk is entitled to damages in accordance with 35 U.S.C. §§ 271, 281, 284, and 287.

## COUNT III – DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,178,097
## FOR THE CLAIMED SYSTEM

75.    The allegations set forth in the foregoing paragraphs 1 through 74 are hereby re-alleged and incorporated by reference.

76.    In violation of 35 U.S.C. §271(a), Evernote has directly infringed and continues to directly infringe, literally, and under the doctrine of equivalents, one or more claims of the '097 Patent by making, using, offering for sale, selling, or importing the Evernote Reference Preservation System, in this judicial district and elsewhere in the United States (directly or through intermediaries), that perform the steps recited in at least Claims 1 and 18 of the '097 Patent.

77.    When using the Evernote Reference Preservation System, Evernote uses an Evernote database connected to the Internet.

78.    When using the Evernote Reference Preservation System, Evernote puts into service a first communications device (*e.g.*, a computer) which is connected to the Evernote Database through the Internet and adapted for use by an Evernote customer to author a transcript and transmit the address of a web site that is referenced in the transcript to the Evernote database.

79.    When using the Evernote Reference Preservation System, Evernote uses an Evernote database which is adapted for use to store a verbatim copy of a website (as it existed when an address to the website is transmitted to the database by an Evernote customer (who is the author of the manuscript) along with an associated, distinctive key that identifies the verbatim copy.

80.    When using the Evernote Reference Preservation System, Evernote puts into service a second communications device (*e.g.*, a computer) which is connected to the Internet

and is adapted for use by an Evernote customer (who is the audience for the manuscript) to transmit the associated, distinctive key that identifies the verbatim copy of the website.

81.     When using the Evernote Reference Preservation System, Evernote uses an Evernote database which is connected to the Internet and adapted for use to transmit the stored, verbatim copy of the website in response to receiving the associated, distinctive key that identifies the verbatim copy.

82.     When Evernote uses the Evernote Reference Preservation System to infringe at least Claims 1 and 18 of the '097 Patent, the transmission or transfer of a web site address or reference to or from the first or second communications devices causes the devices to act for their intended purposes to transmit a verbatim copy of the web site or associated, distinctive key.

83.     Under 35 U.S.C. §271(a), Evernote, by using a webserver that hosts the Evernote Reference Preservation System and delivers web pages containing embedded programming, puts the system as a whole into service so that Evernote may benefit from the system.

84.     Evernote's infringement has injured or will continue to injure Talsk and Talsk is entitled to recover damages adequate to compensate it for Evernote's infringement, which in no event can be less than a reasonable royalty.

85.     Talsk is entitled to damages in accordance with 35 U.S.C. §§ 271, 281, 284, and 287.

## COUNT IV – INDIRECT INFRINGEMENT OF U.S. PATENT NO. 7,178,097 FOR THE CLAIMED SYSTEM

86.     The allegations set forth in the foregoing paragraphs 1 through 85 are hereby re-alleged and incorporated by reference.

87.     In violation of 35 U.S.C. §271(b), Evernote has induced, and still is inducing, the infringement of the '097 Patent in this District and elsewhere by actively encouraging its

customers to use the Evernote Reference Preservation System in an infringing manner through marketing, promoting, soliciting, importing, offering for sale, selling and distributing the Evernote Reference Preservation System, that when used as intended and directed by Evernote, infringes at least Claims 1 and 18 of the '097 Patent, either literally or under the doctrine of equivalents.

88.     Evernote induces its customers to infringe at least Claims 1 and 18 of the '097 Patent by actively encouraging customers to use the Evernote Reference Preservation System in an infringing manner through advertisements and instructions on the Evernote website.  *See, e.g.*, https://help.evernote.com/hc/en-us (Evernote Help and Learning website) (last visited on August 29, 2017).

89.     Evernote induces its customers to infringe at least Claims 1 and 18 of the '097 Patent by actively encouraging customers to use the Evernote Reference Preservation System in an infringing manner by providing training and training materials that instruct its customers on how to use the Evernote Reference Preservation System in an infringing manner. *See, e.g.*, Exs. 8, 10 (Evernote "Getting Started" guides); Exs. 11, 23 (Evernote user guides with instructions on how to use Web Clipper to save web content to Evernote); Ex. 12 (Evernote user guide with instructions on how to create Evernote public links and share notes with Evernote); Ex. 13 (Evernote user guide with instructions on how to create Evernote note links and share notes with note links); Ex. 15 (Evernote user guide with instructions on how to create Evernote note links and share notes with note links); Ex. 29 (Evernote Mac Customer Guide); Ex. 30 (Evernote blog post with instructions on how to create "commonplace notebooks").

90.     At least in certain instances, Evernote provides training and training material to its existing and potential customers through Evernote Certified Consultants. *See, e.g.*, Exs. 24, 25

(details regarding the Evernote Certified Consultant program and the services consultants provide, including in-person and virtual training sessions). *See also*, https://evernote.com/certified-consultants (Evernote Certified Consultant website) (last visited August 29, 2017).

91.     Evernote induces its customers to infringe at least Claims 1 and 18 of the '097 Patent by actively encouraging customers to use the Evernote Reference Preservation System in an infringing manner by providing customer support to its customers on how to use the Evernote Reference Preservation System in an infringing manner. *See, e.g.*, https://help.evernote.com/hc/en-us/requests/new (Evernote Support website) (last visited August 29, 2017).

92.     Customers of the Evernote Reference Preservation System use the Evernote Reference Preservation System to infringe at least Claims 1 and 18 of the '097 Patent by putting the claimed invention into service, *i.e.*, controlling the Evernote Reference Preservation System as a whole and obtaining a benefit from it.

93.     Customers of the Evernote Reference Preservation System put into service an Evernote database that is connected to the Internet.

94.     Customers of the Evernote Reference Preservation System use a first communications device (*e.g.*, a computer) which is connected to the world wide web and adapted to adapted for use by the Evernote corporate customer to author a transcript and transmit the address of a web site that is referenced in the transcript to the Evernote database.

95.     Customers of the Evernote Reference Preservation put into service an Evernote database which is adapted for use to store a verbatim copy of a website (as it existed when an address to the website is transmitted to the database by the Evernote corporate customer (who is

the author of the manuscript) along with an associated, distinctive key that identifies the verbatim copy.

96.     Customers of the Evernote Reference Preservation System use a second communications device (*e.g.*, a computer) which is connected to the Internet and is adapted for use by an Evernote customer (who is the audience for the manuscript) to transmit the associated, distinctive key that identifies the verbatim copy of the website.

97.     Customers of the Evernote Reference Preservation put into service an Evernote database which is connected to the Internet and adapted for use to transmit the stored, verbatim copy of the website in response to receiving the associated, distinctive key that is identifies the verbatim copy.

98.     Under 35 U.S.C. §271(a), Evernote customers of the Evernote Reference Preservation System cause the Evernote Reference Preservation System as a whole to perform the step of obtaining a copy of the web site from the Internet or web upon receiving the web site address from the customers such that transmitting or transferring the verbatim copy of the stored copy of the web site and obtaining a benefit from the result.

99.     Evernote's infringement has injured or will continue to injure Talsk and Talsk is entitled to recover damages adequate to compensate it for Evernote's infringement, which in no event can be less than a reasonable royalty.

100.     Talsk is entitled to damages in accordance with 35 U.S.C. §§ 271, 281, 284, and 287.

## JURY DEMAND

Plaintiff Talsk Research, Inc. hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Plaintiff Talsk Research, Inc. respectfully requests that the Court find in its favor and against Defendant Evernote Corporation, and that the Court grant Plaintiff the following relief:

A.      an adjudication that Defendant has infringed the '097 Patent;

B.      a finding that Defendant's infringement has been willful;

C.      an award of damages to be paid by Defendant adequate to compensate Plaintiff for Defendant's past infringement of the '097 Patent, and any continuing or future infringement through the date such judgment is entered, including prejudgment and post-judgment interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

D.      an award of treble damages;

E.      a finding that this case is "exceptional" under 35 U.S.C. § 285 and awarding Plaintiff its expenses and attorneys' fees incurred in bringing and prosecuting this action; and

F.      an award to Plaintiff of such further relief at law or in equity as the Court deems just and proper, including, but not limited to costs, fees, expenses, and/or interest.

Respectfully submitted,

OF COUNSEL:

William Cory Spence
Matthew A. Werber
SpencePC
405 N. Wabash Ave., Suite P2E
Chicago, Illinois 60611
312-404-8882
william.spence@spencepc.com
matt.werber@spencepc.com

*/s/ Ryan P. Newell*
Arthur G. Connolly, III (#2667)
Ryan P. Newell (#4744)
Mary I. Akhimien (#5448)
CONNOLLY GALLAGHER LLP
The Brandywine Building
1000 West Street
Wilmington, DE 19801
(302) 757-7300
aconnolly@connollygallagher.com
rnewell@connollygallagher.com
makhimien@connollygallagher.com

Dated:  August 30, 2017

*Attorneys for Plaintiff*
*Talsk Research, Inc.*